UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RAMON WADE RENFRO,

     Petitioner,

v.                                     Case No. 3:18cv1319-RV-HTC

MARK S. INCH,[1]

     Respondent.

_____/

## ORDER and REPORT AND RECOMMENDATION

Petitioner, Ramon Wade Renfro, filed a habeas corpus petition under 28 U.S.C. § 2254, challenging his conviction in the First Judicial Circuit for Santa Rosa County case number 2013-CF-0632.[2]  ECF Doc. 1.  The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After considering the petition, ECF Doc. 1, the State's Response, ECF Doc. 11, and Renfro's reply, ECF Doc. 19, the undersigned recommends the petition be DENIED without an evidentiary hearing.

---

[1] Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent.  *See* Fed. R. Civ. P. 25(d).

[2] The petition incorrect identifies the case as being in Walton County.  ECF Doc. 1.

## I.    BACKGROUND

### A.    The Offense and Conviction

The following is derived from the evidence presented at trial:  On February 8 and 9, 2013, Renfro, then age 38, took around six or seven males and females between ages 14 and 19 camping.  ECF Doc. 11-7 at 48-49.  He was the only adult present on the trip and brought with him alcohol and tattooing equipment.  *Id.*  The State accused Renfro of providing alcohol to the minors and with having sexual activity with three underaged girls during the trip: Sixteen-year-old CED; fourteen-year-old EH and fifteen-year-old BA.  *Id.* at 48.  He was also charged with tattooing CED and BGA, without their parents' permission and not being a licensed tattoo artist.  *Id.* at 50.

Renfro was charged in an Information with the following eight (8) counts. Count 1: Lewd and Lascivious Battery of BGA; Count 2: Lewd or Lascivious Molestation of EH; Count 3: Unlawful Sexual Activity with a Minor (CED); Counts 4-6: three counts of Contributing to Child Delinquency; Count 7: Tattooing a Minor (at least 16 but less than 18 years of age) (CED); and Count 8: Tattooing a Minor less than 16 years of age (BGA).  Information, ECF Doc. 11-1 at 2 (June 17, 2013).

Renfro was convicted after a jury trial on July 10, 2014 on all counts.  Jury Verdict, ECF Doc. 11-2.  He was sentenced to 15 years imprisonment on each of the first three counts, to run consecutively for a total of 45 years, and to time served on

the remaining counts, running concurrently to the first three and each other.  ECF Doc. 11-6 at 14-15.

### B.    Postconviction Procedural History

Renfro appealed the judgment and sentence to the First District Court of Appeal ("First DCA"), case number 1D14-4060, and the First DCA affirmed p*er curiam* without written opinion on April 8, 2016.  ECF Doc. 11-8 at 13.  Renfro did not move for rehearing or seek discretionary review with the Florida or United States Supreme Courts.

On May 23, 2016, Petitioner filed a motion to mitigate sentence under Florida Rule of Criminal Procedure 3.800(c).[3]  ECF Doc. 11-8 at 14.  That motion was denied on June 3, 2016, and Petitioner did not attempt to appeal.  *Id.* at 22.

Renfro filed a Rule 3.850 Motion for Post-Conviction Relief on December 27, 2016.  *Id.* at 24.  The circuit court dismissed the motion without prejudice to filing an amended one, *id.* at 44, which petitioner did on March 6, 2017.[4]  *Id.* at 46.  The circuit court rendered a final order denying the 3.850 motion on July 11, 2017, *id.* at 58, and denied rehearing on August 8, 2017.  *Id.* at 168.

---

[3] When available, the undersigned refers herein to the date the Petitioner submitted the referenced filing to prison mail officials, rather than the docketed date.  *See* Habeas Rule 3(d) and *Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (Under the "prison mailbox rule," a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.).

[4] "[F]or the purposes of tolling under 28 U.S.C. § 2244(d)(2), a petitioner's Rule 3.850 motion is 'pending' until it is denied with prejudice."  *Hall v. Sec'y, Dep't of Corr.*, 921 F.3d 983, 990 (11th Cir. 2019).  Thus, in Florida, "when a postconviction motion is stricken with leave to amend, the amended motion relates back to the date of the original filing."  *Id.*

Petitioner timely appealed the dismissal to the First DCA (case number 1D17-3451) and the First DCA affirmed *per curiam* and issued a written opinion. ECF Doc. 11-14 at 1. The mandate was issued on May 8, 2018. *Id.* at 5. Petitioner did not seek rehearing in the First DCA or discretionary review in the Florida or United States Supreme Courts.

Petitioner filed his federal petition on May 3, 2018. ECF Doc. 1 at 12. Respondent does not dispute that the petition is timely filed.

## II.    DISCUSSION

Renfro raises four grounds for relief in his petition: (1) trial court error in excluding two FDLE DNA reports that excluded Petitioner as a donor on one of the victims' underwear; (2) IATC for failing to investigate the DNA issues involved in Ground One and call an expert witness to testify about them; (3) IATC for failing to have Renfro evaluated for his competency to stand trial; and (4) IATC based on the cumulative effect of counsel's errors.

### A.    Ground One: Trial Court Error in Excluding Two Exculpatory FDLE DNA Reports

Petitioner argues the trial court erred in excluding two DNA reports regarding three pairs of CED's underwear prepared by the Florida Department of Law Enforcement ("FDLE"). ECF Doc. 18-1. The first FDLE laboratory report, dated August 5, 2013, contained the results of DNA testing conducted on three pairs of CED's underwear: camo, gray, and light blue. ECF Doc. 18-1 at 27. The results of

the tests were: (1) "semen was not identified" on any of the pairs of underwear; (2) the camo pair showed the presence of blood and (3) all three showed the presence of "amylase, a constituent of saliva and other bodily fluids." *Id.* The report also indicated that buccal swabs of CED and appellant were going to be sent to the DNA section of the Pensacola FDLE department for further analysis. *Id.*

The second FDLE laboratory report, dated September 23, 2013, analyzed the same pairs of underwear as in the first test, from which cuttings had been made, and the buccal swabs from CED and appellant, from which complete DNA profiles were obtained. *Id.* at 27-28. The results of the tests (1) from the cutting of the cameo underwear, the DNA profile showed the presence of a mixture, but was insufficient for inclusion purposes; however, it excluded Mr. Renfro as a source of the limited DNA results; (2) with respect to the cutting of gray underwear no DNA results foreign to CED were found; and, (3) with respect to the cutting of light blue underwear, a mixture showed a partial foreign DNA profile and Renfro was excluded as the source of the partial foreign DNA profile. *Id.*

On the morning of the trial, the State informed the trial judge that Renfro had given notice that he intended to offer the two FDLE lab reports as admissions of a party opponent. Trial Transcript, ECF Doc. 11-7 at 17. The State objected, and the trial judge deferred ruling on the issue. *Id.* at 17-26.

The detective to whom the reports were directed testified at trial about the clothing used for the tests. On cross-examination, he indicated he interviewed CED

at her home on February 14, ECF Doc. 11-7 at 81, and stated, "I do recall also taking clothing from her residence where I conducted the interview." *Id.* at 80.  On redirect, the detective testified that he was given the clothes by CED's mother, who told him the clothing had been put into a laundry hamper with other clothes immediately after the camping trip and had been there, unwashed, since the camping trip on February 8, 2013.  *Id.* at 81-82.

At the start of the defense's case, counsel restated his motion to admit the reports as admissions of a party opponent, and the State objected.  ECF Doc. 11-7 at 239.  The trial court indicated it would sustain the State's objection because it found that no foundation had been laid for the reports.  *Id.* at 245-46.  Although the court also allowed defense counsel to re-call the detective to the stand to testify about the report before making a final ruling, defense counsel declined to do so, stating, "Judge, I'm not going to -- he's not going to be able to lay the proper foundation. . . . I'll just rely on the same arguments I've already made." *Id.* at 246.  Thus, the reports were not admitted into evidence.

1. <u>Petitioner did not exhaust this claim by presenting it as a federal issue in state court</u>

Respondent argues that this ground for relief is procedurally barred from federal review because Renfro only presented this issue to the state courts as a state-law-based claim, not a federal claim.  The undersigned agrees.

A federal habeas petitioner must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004) (citing *Duncan*, 513 U.S. at 365–66).

"[A] petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015). A petitioner does so by, for example, "includ[ing] in his claim before the state appellate court 'the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim federal.'" *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (quoting *Baldwin*, 541 U.S. at 32); *see also Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (concluding that

petitioner's federal claims were "fairly presented" where he provided enough information about the claims (and citations to Supreme Court cases) to notify the state court that the challenges were being made on both state and federal grounds).

Petitioner raised this claim in his direct appeal to the First DCA. Indeed, as stated above, in his petition, Renfro relies exclusively on the arguments contained in the brief counsel filed on direct appeal, ECF Doc. 18-1. In that brief, however, Renfro relied solely on Florida case law and the Florida evidentiary statutes as supporting the admissibility of the reports. Counsel writes, for example, that "Appellant moved to introduce the two FDLE reports of the lab results of the tests on CED's clothes on the basis of <u>Garland</u>,[5] and also argued that the reports were self-explanatory (II, 306-07)." ECF Doc. 18-1 at 25.

As Renfro acknowledges in his reply (ECF Doc. 19), counsel's only references to federal law in the appellate brief is in a quote from *Garland,* and a reference to federal law in *Childers v. State*, 936 So. 2d 585 (Fla. 1stDCA 2006). ECF Doc. 18-1 at 30 and 31. Such passing references to federal cases, however, did not fairly present a federal claim. Instead, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking . . . will not turn the trick." *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270-71 (11th Cir.

---

[5] *Garland v. State*, 834 So.2d 265 (Fla. 4th DCA 2002).

2015) (internal quotes omitted).   A petitioner does not satisfy the exhaustion requirement "merely by presenting the state court with 'all the facts necessary to support the claim,' or by making a 'somewhat similar state-law claim.'" *Lucas*, 682 F.3d at 1352 (quoting *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004)).   Therefore, the undersigned finds that Petitioner has failed to exhaust this ground for relief and is now procedurally barred from doing so.

### 2.   Petitioner's trial error claim fails on the merits

Even if Petitioner had exhausted this ground for relief, it would nonetheless fail on the merits.   "A federal habeas corpus court may not interfere with a state court's interpretation of state law absent a constitutional violation."   *McCoy v. Newsome*, 953 F.2d 1252, 1264 (11th Cir. 1992) (citing *Bronstein v. Wainwright,* 646 F.2d 1048, 1050 (5th Cir. Unit B June 1981)).   Thus, relief will be granted based on an evidentiary ruling only if the ruling affects the fundamental fairness of the trial.   *Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir.1998) (per curiam), *cert. denied*, 528 U.S. 1082 (2000).   "Because a federal habeas corpus case is not a vehicle to correct evidentiary rulings, we 'inquire only to determine whether the error was of such magnitude as to deny fundamental fairness to the criminal trial.'"   *Baxter v. Thomas*, 45 F.3d 1501, 1509 (11th Cir.), *cert. denied*, 516 U.S. 946 (1995) (quoting *Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir.), *cert. denied*, 513 U.S. 106 (1994)).   In other words, even if the state court's ruling was erroneous, a petitioner is not entitled to relief unless he can show that the evidentiary ruling "had [a] substantial

and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

Renfro cannot meet this heightened burden.  Petitioner has not shown that the state court erred in excluding the FDLE reports.  Under Florida law, a proponent of scientific evidence must establish a chain of custody and lay the proper foundation for expert testimony, before its introduction into evidence.  *Casias v. State*, 94 So. 3d 611 (Fla. 2d DCA 2011) (finding State failed to lay proper evidentiary foundation for admission of this testimony where FDLE analyst failed to testify as to method of DNA statistical analysis used); *Stevens v. Florida Dept. of Revenue ex rel. Beltran*, 790 So. 2d 1182 (Fla. 2d DCA 2001) (reversing paternity finding where DOR failed to establish chain of custody of blood sample and proper predicate for admission of putative father's DNA test results).

The trial court did not err in concluding that no foundation had been laid.  The detective could not lay the foundation because he initially could not recall whether he picked up the clothing that was tested at the hospital or from the victim's house and then subsequently testified that the clothing was retrieved from a hamper at the victim's home mixed with other clothing from the day before.  ECF Doc. 11-7 at 80-82.  Indeed, as set forth above, defense counsel acknowledged that the detective could not lay a foundation.  *Id.* at 246.  Additionally, no expert testified to show how the clothing was received and kept and the portions tested, and the report provides only the written results in scientific nomenclature of the DNA analyst, not easily

understandable by laypersons, none of which was subject to cross-examination for scientific reliability and accuracy.

Renfro concedes there was a lack of foundation for the reports in his reply (ECF Doc. 19) but argues that the court in its "gate keeping" role should nonetheless have admitted the reports and then allowed the jury to determine what weight to give to the report. ECF Doc. 19 at 8-9. Renfro's legal position is misplaced. The trial court did not err in declining to admit the reports without this adequate foundation.

Additionally, Renfro has not shown that the exclusion of the reports had a "substantial and injurious effect or influence in determining the jury's verdict". *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). In his reply, Renfro argues in conclusory fashion that "the report which excluded his saliva secretion from the victim was exculpatory and would prove his innocence." ECF Doc. 19 at 9. This allegation wholly ignores the testimony from eyewitnesses regarding Renfro's conduct and interactions with CED, including testimony that Renfro brought alcohol and tattooing equipment on the camping trip; that Renfro took EH and BA mudding in his truck and that the girls were naked and highly intoxicated in the cab of his truck when they returned; that CED had performed oral sex on Renfro; that Renfro attempted to insert his finger in CED's vagina (ECF Doc. 11-7 at 207-08); and that Renfro had vaginal intercourse with CED. *Id.* at 209. The results of the reports would not have contradicted or undermined this testimony. Therefore, even if Renfro had exhausted this ground for relief, (as the First DCA concluded in

addressing ground two, discussed below), the exclusion of the reports did not render the trial fundamentally unfair. Accordingly, the undersigned finds that Petitioner is not entitled to habeas relief on this claim.

## B.    Ground Two: IATC for Failing to Investigate and Call an Expert Witness to Testify About the DNA Reports

Renfro argues that trial counsel was ineffective for failing to investigate the DNA issues in the FDLE reports and for failing to retain an expert to testify as a witness to lay the foundation for the reports that the circuit court had found missing. ECF Doc. 11-8 at 47-48. In his petition, Renfro relies exclusively upon the arguments he raised in his 3.850 motion. *See* ECF Doc. 11-7 at 245-46.

The First DCA expressly addressed this issue in a written opinion affirming the denial of Renfro's 3.850 motion. Specifically, the court concluded that Renfro was not entitled to relief because even if counsel's performance had been deficient, "there is not a reasonable probability that the outcome of the trial would have been different." *Renfro v. State*, 243 So. 3d 517, 518 (Fla. 1st DCA 2018) (citing *Strickland*, 466 U.S. at 694). The court's conclusion was based on the fact that the DNA evidence related to only CED, and thus had no bearing on his other convictions. *Id.* Additionally, there was substantial other evidence showing that Renfro committed sexual acts on CED. *Id.*

Under the standard of review for a § 2254 motion, this Court should not grant habeas relief unless the state court's decision (1) "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010).

Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the . . . case." *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring). Even if a federal court concludes the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *See Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

The undersigned finds that the state court's determination was neither contrary to law or based on an unreasonable determination of the facts. *See* 28

U.S.C. § 2254(d). To the contrary, the undersigned finds that the state court correctly applied *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Under *Strickland,* a petitioner seeking relief on grounds of IATC must show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). *Id.*

Counsel's performance is deficient only if counsel's "identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. The deficient performance prejudiced the defendant only if the reasonable probability of a different result rises to a level that is "sufficient to undermine confidence in the outcome." *Id.* at 694. To prevail on a claim of ineffective assistance of counsel, both parts of the *Strickland* test must be satisfied. *Bester v. Warden, Att'y Gen. of the State of Ala.*, 836 F.3d 1331, 1337 (11th Cir. 2016) (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). However, a court need only address one prong, and if it is found unsatisfied, the analysis ends. *Id.*

As the First DCA aptly concluded and as set forth in Section II.A., the introduction of the DNA reports would not have changed the outcome of the case because there was substantial other evidence to support Renfro's conviction and the DNA reports were limited to CED. Thus, even if counsel had been ineffective for not doing more to ensure the admissibility of the DNA reports, his conduct was not prejudicial to Renfro.

**C.   Ground Three: IATC for Failure to Have the Petitioner Evaluated for Competency to Stand Trial**

Petitioner claims trial counsel was ineffective for failing to seek a competency evaluation and hearing before Renfro stood for trial, despite knowing that Renfro suffered "a lifelong history of Attention Deficit Hyperactivity Disorder (A.D.H.D.) with hypomanic episodes, including learning disorders and other mental health disabilities."  ECF Doc. 11-8 at 50.  In his petition, Petitioner relies exclusively on the arguments in his 3.850 motion.

The First DCA did not address this issue in its written opinion affirming the denial of the 3.850 motion.  *Renfro v. State*, 243 So. 3d 517 (Fla. Dist. Ct. App. 2018) ("We affirm the denial of the motion but write to address the claim raised in [only] ground one.").  Therefore, this Court will "look through" that decision to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  Here, that last decision comes from the circuit court's Final Order on Motion for Post-Conviction Relief, issued on July 11, 2017. (ECF Doc. 11-8 at 58).

The state circuit court applied *Strickland* and rejected the claim because Renfro had shown neither deficient performance nor prejudice.  Notably, the court found that Renfro had made only conclusory allegations of prejudice and never alleged "he did not have the capacity to understand the proceedings nor to consult

with his attorney in his defense" or showed "that a reasonably competent attorney would have questioned Defendant's competence to proceed." *Id.* at 59 & 61-63. The undersigned finds that the state court's conclusion was not contrary to, and or an unreasonable application of, clearly established Federal law and did not involve an unreasonable determination of the facts.

Under Florida law, the test for whether a defendant is competent to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Peede v. State*, 955 So. 2d 480, 488 (Fla. 2007) (quoting *Dusky v. United States,* 362 U.S. 402, 402 (1960)). If a "reasonable ground to believe that the defendant is not mentally competent to proceed" exists, then the requirement that the court hold a hearing is mandatory. *Boggs v. State,* 575 So.2d 1274, 1275 (Fla. 1991); *Cotton v. State,* 177 So.3d 666, 668 (Fla. 1st DCA 2015).

Petitioner's sole basis for this ground for relief is that he has a "lifelong history of [ADHD] with hypomanic episodes, including learning disorders and other mental health disabilities." ECF Doc. 11-8 at 50. Renfro argues that counsel should have known of his ADHD because "[t]he majority of the documents are contained in the court records and are otherwise clearly evident." *Id.* An ADHD diagnosis, alone, however, does not necessarily mean that Renfro was incompetent to stand trial. *See Bush v. Wainwright,* 505 So. 2d 409, 411 (Fla. 1987) (citing to *James v. State,* 489

So.2d 737 (Fla. 1986) ("The numerous psychological problems now pointed out, such as learning disabilities, a passive and dependent personality, and possible "diffuse organic brain damage" do not, when taken together, sufficiently raise a valid question as to [a defendant's] competency to stand trial."). As Respondent argues, "not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." ECF Doc. 11 at 31 (citing *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995).

And, as the state court correctly determined, Renfro never alleged that lacked the capacity to understand the proceedings or to consult with his attorney in his defense. He sets forth no allegations regarding how any of the purported mental issues affected his ability to understand the proceedings. Indeed, the record is devoid of any statement or circumstance which would support a determination that Renfro was so limited. To the contrary, the record shows that Petitioner was able to follow the court's instructions and coherently address the state court throughout the proceedings. Therefore, Renfro has not met his burden of showing that counsel was deficient in failing to raise the issue of competency before trial. The law does not require counsel to raise every available non-frivolous defense, *Knowles v. Mirzayance*, 556 U.S. 111, 126-27 (2009), and counsel is not ineffective for failing to raise a non-meritorious argument. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001).

Also, as Respondent argues, in a substantive claim of incompetency to stand trial, the petitioner bears a heavy burden to present facts by clear and convincing evidence creating a "real, substantial and legitimate doubt" as to his competence to stand trial. *Medina*, 59 F.3d at 1106; *Card v. Singletary,* 981 F.2d 481, 484 (11th Cir.1992) ("the standard of proof is high [and] the facts must positively, unequivocally, and clearly generate the legitimate doubt."). Petitioner clearly has not met that burden. In other words, Renfro's conclusory allegations do not meet the standards required to trigger a court to order a competency evaluation under Florida law. *See Rodgers v. State*, 3 So. 3d 1127, 1132-33 (Fla. 2009). Therefore, this ground satisfies neither prong from *Strickland* and does not entitle Renfro to habeas relief.

### D.    Ground Four: Cumulative Effect of the Individual Instances of Ineffective Assistance Deprived Petitioner of a Fundamentally Fair Trial

For the reasons given above, the undersigned finds that none of Renfro's ineffective assistance claims have any merit. Thus, there can be no cumulative error. *See, e.g.*, *Morales v. Sec'y, Fla. Dep't Corr.*, 710 F. App'x 362, 365 (11th Cir. 2017) ("[W]e have rejected all of the claims of error before us. There are, therefore, no errors to cumulate."). Additionally, for the reasons listed in Section II.A and II.B above, substantial evidence supported the finding of guilt. Therefore, Petitioner has not shown circumstances "undermining confidence in the outcome" of the trial and entitling Petitioner to habeas relief. *See Strickland*, 466 U.S. at 694.

## III.    CONCLUSION

For the reasons stated above, Renfro is not entitled to habeas relief on any of his Grounds.

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.    In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Petitioner has not met the burden to establish the need for a federal evidentiary hearing.  *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011), *cert. denied*, 565 U.S. 1120 (2012).  The pertinent facts are fully developed in the record or the record otherwise precludes habeas relief; therefore, the Court is able to "adequately assess [Petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034 (2004).

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability.  28

U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial

of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is

also recommended that the district court deny a certificate of appealability in its final

order.

The second sentence of Rule 11(a) provides: "Before entering the final order,

the court may direct the parties to submit arguments on whether a certificate should

issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to

this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and

recommendation.

Accordingly, it is ORDERED:

1.      The clerk is directed to update the case file information to reflect Mark

S. Inch as the Respondent.

Additionally, it is respectfully RECOMMENDED:

1.      That the amended petition under 28 U.S.C. § 2254, challenging the

conviction in *State v. Renfro,* 2013-CF-0729, in the First Judicial Circuit, in and for

Santa Rosa County, Florida, ECF Doc. 7, be DENIED without an evidentiary

hearing.

Case No. 3:18cv1319-RV-HTC

2.      That a certificate of appealability be DENIED.

3.      That the clerk be directed to close the file.

At Pensacola, Florida, this 9th day of October, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**